**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Paula Crawford,

       Plaintiff,

                                       **Case No. 2:10-cv-258**
                                       **Judge Smith**

v.                                       **Magistrate Judge King**

JPMorgan Chase & Co.,

       Defendant.

**OPINION AND ORDER**

     This matter is before the Court on the Motion for Summary Judgment filed by Defendant Chase Home Finance, LLC ("Chase")[1] (Doc. 46).  This motion is fully briefed and ripe for disposition.  For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**I.  Background**

     In May 1995, Plaintiff Paula Crawford was hired by Chemical Bank, one of Chase's predecessors, as a Customer Service Representative working in the mortgage loan department in Columbus, Ohio.  Plaintiff subsequently worked as an administrative assistant in the Asset Recovery department.  During her tenure as an administrative assistant, Plaintiff filed a charge of race discrimination against Chase, which was dismissed after a finding of no probable cause.  In 1999, Plaintiff became a collector, a position she held for four years.  In approximately August 2003, she was promoted to Senior Operations Analyst.  In November 2003, and while she

---

[1] It is undisputed that Defendant was incorrectly named in the Complaint as "JPMorgan Chase & Co.".

continued to work at Chase, Plaintiff began working full time with Safe Auto, an insurance company, as a customer service representative. She worked at Safe Auto until approximately February 2007. In March 2005, and while working at Safe Auto, Plaintiff allegedly witnessed a co-worker wielding a firearm. The co-worker killed himself outside Plaintiff's presence. Plaintiff alleges that this incident caused her to sustain post-traumatic stress disorder, depression, and anxiety, for which she began mental health care counseling with a social worker.

In September 2006, Plaintiff was promoted by Chase to work as a Project Manager performing Regulation AB ("asset backed" securities) review of contract servicing agreements for Chase's Quality Audit and Default Processing group. Plaintiff performed this review to ensure that Chase was complying with all of these servicing agreements. This position allowed her to apply legal knowledge she acquired during her studies in law school.[2] As a Project Manager, Plaintiff's initial supervisor was Nancy Gravine, who was based in Michigan and therefore remotely managed Plaintiff. Plaintiff's secondary supervisor was Marsha Fogle, who was based in Phoenix, Arizona.

In November 2006, Plaintiff requested, and was granted, leave under the Family Medical Leave Act ("FMLA") for gall bladder surgery. She also received paid short-term disability ("STD") benefits during her absence due to this surgery. Plaintiff alleges that Ms. Gravine improperly told others that she was absent due to gall bladder surgery. From January to March 2007, Plaintiff took approved FMLA leave from her work at Chase for anxiety and depression, and she received benefits under Chase's disability leave policy during this period.

---

[2] Plaintiff is not admitted to the bar as she has not passed the bar examination since graduating from law school in 2001.

After Plaintiff returned to work in March 2007, she began to report to Parrish McIntosh, who replaced Ms. Gravine as Plaintiff's direct supervisor.  In April 2007, Plaintiff requested that she receive both a laptop computer, so she could work remotely, and the assistance of temporary workers to help with an assignment that involved creating and building a database for contract servicing agreements.  These specific requests were denied.

In the summer of 2007, Plaintiff began to remotely report to a new direct supervisor, Marsha Van Dam, who was based in Phoenix.  In August 2007, Ms. Van Dam traveled to Columbus for business reasons.  During her time in Columbus, Ms. Van Dam met with Plaintiff to discuss the database that was being built.  Plaintiff alleges that Ms. Van Dam was "rude" and "openly hostile" toward her, such as by cutting her off, or talking over her, when she was speaking at meetings.  (Pl. Dep., p. 236, 324-25).  Plaintiff also alleges that Ms. Van Dam would "sneak up" on Plaintiff when she was in her work cubicle, that Ms. Van Dam failed to notify her of a department luncheon, and that Ms. Van Dam invited her to attend a meeting in Dallas, Texas, but then retracted the invitation shortly before it occurred.  (Pl. Dep., p. 256, 289-90).

In October 2007, Plaintiff again requested the assistance of temporary workers, but Ms. Van Dam and Ms. Fogle rejected this request.  Ms. Van Dam did, however, offer to personally help Plaintiff and also offered the assistance of another team member.  Ultimately, neither Ms. Van Dam nor the other team member assisted Plaintiff in working on this project.

In November 2007, Plaintiff received an overall performance evaluation of "meets expectations," and she received a merit increase in her salary for her performance in 2007. (Pl. Dep., p. 331).  According to Plaintiff, when she discussed her 2007 performance review with Ms. Van Dam, Ms. Van Dam was generally "inflammatory and negative."  (Pl. Dep., p. 328).  In

response, Plaintiff complained to Ms. Fogle about the review and about her strained conversations and interactions with Ms. Van Dam. Ms. Fogle met with Plaintiff to discuss her complaints and eliminated some of the comments in the review but did not change the overall rating.

In December 2007, Plaintiff began approved FMLA leave from Chase for depression and stress. Plaintiff returned to work in February 2008, and she learned that her Project Manager position was being eliminated. Plaintiff then assumed either a Quality Analyst II or III position[3] and began reporting to Mike McCall in March 2008. In the Quality Analyst position, Plaintiff's responsibilities focused on completing internal reviews of business processes to mitigate risks and ensure compliance with applicable government and corporate regulations and guidelines. Although the job transfer did not result in a change in Plaintiff's salary, salary grade, bonus potential, work hours, or work location, she asserts that the new position did not require her to apply her legal knowledge and that her new duties were more clerical in nature. Plaintiff received "meets expectations" reviews for 2008 and 2009, and she received merit pay increases for those years. In May 2010, Plaintiff was promoted to a Senior Compliance Officer position within the compliance department, and she currently holds this position. This promotion resulted in a significant pay increase, and in 2011 she received a $3,000 bonus for her work. In June 2011, Plaintiff requested that she be permitted to work from home due to continuing issues relating to post-traumatic stress disorder and depression, and her supervisor granted this request.

Plaintiff initiated this action in March 2010, alleging that Chase has interfered with her

---

[3] It is unclear whether Plaintiff assumed a Quality Analyst II or III position, as the evidence is inconsistent on this point. Ultimately, however, the precise designation is inconsequential because undisputed evidence demonstrates that Plaintiff's employment after the transfer was equivalent to her employment before the transfer, as explained below. Hereinafter, this position will be referred to simply as "Quality Analyst."

rights under the FMLA and retaliated against her for using FMLA leave.  Plaintiff also alleges that Chase discriminated and retaliated against her because of her disability and race, and that Chase violated her privacy.  Chase moves for summary judgment on all claims.  This motion is briefed and ripe for disposition.

## II.    Summary Judgment Standard

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587.  The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53.  Moreover, the

5

purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*,

6

260 F.3d 654, 665 (6th Cir. 2001).

## III.    Discussion

Plaintiff claims violations of FMLA (Count I), disability and race discrimination and retaliation in violation of Ohio law (Counts II and III), and asserts a common law invasion of privacy claim (Count IV). These claims will be discussed in turn.

### A.    FMLA

Plaintiff does not allege that Chase wrongfully denied her requests for FMLA leave, as she concedes that Chase approved all of her leave requests. Instead, Plaintiff argues that Chase interfered with her rights under the FMLA, and retaliated against her for taking FMLA leave, by demoting her. Chase argues that Plaintiff's FMLA claims fail as a matter of law, as she cannot establish the required elements of an FMLA claim.

The FMLA provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter," 29 U.S.C. § 2615(a)(1), and that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Thus, an employer may not retaliate or discriminate against an employee for taking FMLA leave. *Hunter v. Valley View Local Schools*, 579 F.3d 688, 690 (6th Cir. 2009).

### 1.    Interference Claim

To establish an interference claim under the FMLA, Plaintiff must prove that: (1) she is an "eligible employee," 29 U.S.C. § 2611(2); (2) Chase is an "employer," 29 U.S.C. § 2611(4); (3) she was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) she gave Chase notice of her intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) Chase denied her the FMLA benefits

to which she was entitled. *See Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 720 (6th Cir. 2003).

For the purpose of summary judgment, Chase concedes that Plaintiff can establish the first four elements of an interference claim under the FMLA. But Chase argues that the interference claim fails because it did not deny her any FMLA benefits to which she was entitled. Plaintiff argues that Chase interfered with her right under the FMLA by failing to return her to an equivalent position. Pursuant to the FMLA, an employee has a right to return to her former position, or to an equivalent position, upon her return from FMLA leave. 29 U.S.C. § 2614(a)(1). Chase asserts that because Plaintiff returned to the same position after she returned from approved FMLA leave in February 2008, it did not interfere with her right under Section 2614(a)(1). Chase recognizes, however, that Plaintiff was transferred to a different position a few weeks after she returned. This circumstance raises the issue of whether Plaintiff, for the purpose of Section 2614(a), returned to the same position considering the fact that she was forced to move to a different position within a few weeks of returning to work. It is unnecessary, however, to resolve this issue. Even assuming Plaintiff was not restored by Chase to the position she held when the leave commenced because she was soon thereafter transferred to another position, there was no interference under Section 2614(a) because she transferred to an equivalent position.

Shortly after Plaintiff returned from her approved FMLA leave in early 2008, she moved from her position as a Project Manager to her position as a Quality Analyst. Plaintiff argues that this was not an "equivalent position" for the purpose of the FMLA. "An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status." 29 C.F.R. § 825.215(a). Furthermore, "[i]t must involve the same or substantially similar duties and responsibilities, which

must entail substantially equivalent skill, effort, responsibility, and authority." *Id.* However, "[t]he requirement that an employee be restored to the same or equivalent job with the same or equivalent pay, benefits, and terms and conditions of employment does not extend to de minimis, intangible, or unmeasurable aspects of the job." 29 C.F.R. § 825.215(f).

Plaintiff does not dispute that the Project Manager and Quality Analyst positions involved similar job duties, and the same salary, salary grade, bonus potential, hours, and work location. Plaintiff argues that the change took her off her career path and that this change was essentially a demotion in view of the management hierarchy. These arguments are unpersuasive. Plaintiff's argument that the change diverted her from her career path is both speculative and inconsistent with her promotion to Senior Compliance Officer in May 2010. Whether the change in positions changed Plaintiff's opportunity for advancement is subject to speculation because it relies on the unknown likelihood of future events. And that the change in position placed Plaintiff on a different employment path does not mean that the positions are not equivalent for the purpose of FMLA.

Moreover, Plaintiff's argument that she was demoted within the organizational hierarchy is not supported by the record. Plaintiff asserts that she and Mike McCall both reported directly to the same manager, Parrish McIntosh, when she was a Project Manager, and that she reported directly to Mr. McCall, and indirectly to Mr. McIntosh, after her transfer to the Quality Analyst position. According to Plaintiff, the change in the organizational structure is evidence that she was demoted. But the fundamental flaw in this reasoning is it does not address the fact that Plaintiff and Mr. McCall had different job duties and responsibilities – she was an individual contributor doing "Regulation AB" work without any supervisory responsibility, while Mr.

9

McCall was an Operations Manager with supervisory responsibilities. Thus, even though both Plaintiff and Mr. McCall reported to the same person before Plaintiff's transfer, Mr. McCall was above Plaintiff in the management hierarchy and not her peer.

Furthermore, Plaintiff's interference claim is deficient because purported "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006). Defendant has presented evidence that the Project Manager position held by Plaintiff was eliminated for business reasons. Ms. Fogle testified that she decided to eliminate this Project Manager position because the job duties performed by Plaintiff did not require the services of a full-time employee. (*See* Fogle Decl., ¶ 3). These duties were reassigned to other employees within Ms. Van Dam's team.

Plaintiff suggests that the position was not actually eliminated in view of an email sent by Lauren Nicks in Chase's Human Resources department which states in part that "we can't justify eliminating a position" in reference to Plaintiff and her employment. (Pl. Dep., Ex. 23). But this statement must be read in context. The email from Ms. Nicks was in response to two emails written by Ms. Van Dam indicating that there was not enough work to justify the full-time status of Plaintiff and inquiring into how to best deal with Plaintiff and the position she held. Ms. Nicks' email indicates that they could not "justify eliminating a position" because of the growth in the department, and it discusses the reassignment of Plaintiff. When viewed in its entirety, the email written by Ms. Nicks indicates that dismissing Plaintiff from employment, even though there was not enough work for her, was not the best option; rather, business needs mandated her retention and reassignment.

10

Because her position was eliminated for business reasons, and Plaintiff has not presented evidence disputing this reasoning, Plaintiff was not entitled to continued employment in this position. Consequently, Plaintiff cannot show any FMLA interference. Accordingly, the Court finds that Plaintiff's FMLA interference claim fails as a matter of law.

### 2.    Retaliation Claim

Defendant argues that Plaintiff's FMLA retaliation claim fails because she did not suffer an adverse employment action and because she cannot demonstrate any causal connection between protected activity and action taken against her. To prevail on an FMLA retaliation claim, a plaintiff must establish that: (1) she availed herself of a protected right under the FMLA; (2) she suffered an adverse employment action; and (3) that there is a causal connection between the exercise of her rights under the FMLA and the adverse employment action. *Edgar*, 443 F.3d at 508.

Plaintiff does not purport to offer direct evidence of FMLA retaliation; instead, she seeks to demonstrate it indirectly. Thus, her FMLA retaliation claim is evaluated under the three-part *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to plaintiff's FMLA retaliation claim). Under *McDonnell Douglas*, the plaintiff bears the initial burden of proving a *prima facie* case of discrimination. Then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. If the defendant presents such a reason, the burden shifts back to the plaintiff to show that the articulated reason is a pretext for discrimination. *Id.*

As noted above, the basis for Plaintiff's retaliation claim is her assertion that she was

11

demoted.  Because she was transferred to an equivalent position, she cannot make a *prima facie* showing of FMLA retaliation.  Additionally, Plaintiff fails to show any causal connection between the transfer and her FMLA request.  Even if Plaintiff could make a *prima facie* showing, Defendant presents a legitimate, non-discriminatory reason for the transfer.  Plaintiff fails to demonstrate that this reason was pretextual, and that the real reason was retaliation.  Thus, Plaintiff's FMLA retaliation claim fails.

### B.      Race and Disability Discrimination

Plaintiff, who is African-American and asserts disability due to post-traumatic stress disorder and depression,[4] claims race and disability discrimination in violation of Ohio law.  Ohio Revised Code § 4112.02 prohibits employers from discriminating against any person with respect to the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," on the basis of that person's race or disability.  Ohio Rev. Code § 4112.02(A). Discrimination claims brought under Ohio law are analyzed in the same manner as discrimination claims brought under federal law.  *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Oh. Civil Rights Comm'n*, 421 N.E.2d 128, 131-32 (Ohio 1981).  As Plaintiff does not allege direct evidence of discrimination, the analysis must proceed under the *McDonnell-Douglas* framework set forth above, except to the extent Plaintiff asserts a "mixed motive" theory of liability.  Because it is unclear whether Plaintiff brings a "single-motive" or "mixed motive" theory of liability, the Court will address both.[5]  The Court will also address Plaintiff's claim that she was subjected to a

---

[4] For the purpose of its summary judgment motion, Chase concedes that Plaintiff's mental health conditions render her legally disabled.

[5] A single-motive claim alleges that an illegitimate reason motivated an employment decision, and a mixed-motive claim alleges that both legitimate and illegitimate reasons motivated

racially hostile work environment.

## 1.     Single-Motive Theory

Plaintiff alleges that her race and/or disability motivated Chase to transfer her to the

Quality Analyst position.  According to Plaintiff, this transfer was a demotion.  In order to

establish a *prima facie* case of discrimination, Plaintiff must show that (1) she is a member of a

protected class; (2) she was qualified for the job; (3) she experienced an adverse employment

action; and (4) she was replaced by a person outside the protected class or she was treated

differently than a similarly situated non-protected employee.  *See Newman v. Federal Express

Corp.*, 266 F.3d 401, 406 (6th Cir. 2001).

Chase argues that Plaintiff cannot establish a *prima facie* case of discrimination because

she cannot show that she experienced an adverse employment action or that she was replaced by a

person outside the protected class or she was treated differently than a similarly situated

non-protected employee.  Chase's contentions are persuasive.  For the reasons expressed above,

the Court finds that Plaintiff has not shown an adverse employment action due to her transfer.

Even if she could show an adverse employment action, she fails to show that any similarly situated

employee was treated more favorably than her, or that she was replaced by someone outside the

protected category.  Moreover, Chase presents a legitimate, non-discriminatory reason for

Plaintiff's transfer, and Plaintiff presents no evidence to refute this reason.

## 2.     Mixed-Motive Theory

Plaintiff alternatively argues that she can establish race discrimination under the "mixed

_____

the decision.  *Desert Palace v. Costa*, 539 U.S. 90, 93 (2003).

motive" theory – that is, that legitimate and illegitimate reasons motivated Chase's decision to transfer her.  Analyzing whether there is triable issue in a mixed motive case is not conducted under the *McDonnell-Douglas* framework.  To survive summary judgment in a mixed motive racial discrimination case, the plaintiff must produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) race was "a motivating factor" for the defendant's adverse employment action.  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008).

Plaintiff reasons that an email from Ms. Van Dam regarding her August 2007 meeting with Plaintiff demonstrates that she was fearful of Plaintiff because of her race, and that she stereotyped African-Americans as having a propensity to act violently.  But the email, which is more thoroughly discussed below in reference to Plaintiff's hostile work environment claim, outlines Plaintiff's conduct during the meeting and makes no reference to Plaintiff's race, directly or indirectly.  Contrary to Plaintiff's conclusory assertions, she fails to present evidence that could reasonably be construed to support her claim that race was a motivating factor in the decision to transfer her.

### 3.    Hostile Work Environment Claim

Plaintiff also claims that Chase unlawfully discriminated against her by subjecting her to a hostile work environment on the basis of her race.  "Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002), citing *Faragher v. Boca Raton*, 524 U.S. 775, 786-787, and n.1 (1998); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986).  And hostile work environment claims are subject to the tripartite burden-

shifting analysis of *McDonnell-Douglas*. *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 706 (6th Cir. 2007).

A plaintiff establishes a *prima facie* case of a racially hostile work environment by demonstrating that: "(1) the plaintiff was a member of a protected class; (2) the plaintiff was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with the plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *Armstrong v. Whirlpool Corp.*, 363 F. App'x 317, 324 (6th Cir. 2010) (citing *Barrett v. Whirlpool Co.*, 556 F.3d 502, 515 (6th Cir. 2009)).

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted); *Jackson v. Quanex*, 191 F.3d 647, 658 (6th Cir. 1999). Both an objective and a subjective test must be applied: the conduct must have been severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as having been abusive. *Harris*, 510 U.S. at 21-22. Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000). Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment include:

> 1. the frequency of the discriminatory conduct;

2.    the severity of the discriminatory conduct;

3.    whether the discriminatory conduct is physically threatening or
      humiliating, or a mere offensive utterance;

4.    whether the discriminatory conduct interferes with an employee's
      work performance; and

5.    whether the plaintiff actually found the environment abusive.

*Harris*, 510 U.S. at 21-22; *see also Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir.

2000) (reciting factors from *Harris*).  "[T]he inquiry is not subject to any precise mathematical

test."  *Armstrong*, 363 F. App'x at 324 (citing *Abeita v. Transamerica*, 159 F.3d 246, 251 (6th

Cir. 1998)).  "These standards for judging hostility are sufficiently demanding to ensure that Title

VII does not become a 'general civility code.'"  *Faragher v. City of Boca Raton*, 524 U.S. 775,

788 (1998).  The conduct must be extreme, and thus the "ordinary tribulations of the workplace"

do not establish the existence of a hostile environment.  *Id.*

Plaintiff essentially argues that she was subjected to a racially hostile work environment

because her co-workers stereotyped her as dangerous and management created a workplace

environment in which she was "highly scrutinized and monitored."  (Def.'s Mem. Contra, p. 18).

According to Plaintiff, this unfair treatment contributed to her continuing problems with post-

traumatic stress disorder and depression.  Chase argues that Plaintiff fails to present evidence

showing that she was subjected to a racially hostile work environment.  The Court agrees with

Chase.

Plaintiff reasons that an unfair perception of her was created by racial stereotyping and

resulted in a hostile work environment, and that this environment caused her mental distress.  In

support of her position, Plaintiff cites to an email sent by Ms. Van Dam after a meeting she had

16

with Plaintiff.  In the email, Ms. Van Dam wrote to human resources about her meeting with Plaintiff, and she described the combative nature of the meeting.  Ms. Van Dam detailed that Plaintiff "went off in a bad direction.  She reached for her purse and I honestly thought she was going to pull something out to hurt me."  (McCall Dep., Ex. 2).  Plaintiff asserts that she was unfairly perceived as a threat on the basis that she reached into her purse during the meeting with Ms. Van Dam.  Plaintiff also asserts that management's decision to reassign responsibilities in order for her to be managed onsite created a "highly scrutinized and monitored environment." (Pl.'s Mem. Contra, p. 18).  In this regard, Plaintiff testified that Ms. Van Dam would "sneak up" on her in her cubicle apparently to closely monitor her activity.  (Pl. Dep., p. 256).

These circumstances, whether viewed individually or collectively, do not demonstrate the existence of a racially hostile work environment.  Plaintiff's assertion that Ms. Van Dam's perception of her conduct at the meeting created a racially hostile work environment is unavailing. Plaintiff did not have knowledge of Ms. Van Dam's perception until months after the meeting when she found the email that Ms. Van Dam had sent.  The email conveys Ms. Van Dam's interpretation of what occurred at her meeting with Plaintiff.  Ms. Van Dam explained in her email how Plaintiff was combative to her, which provided a context for why she was concerned about Plaintiff reaching into her purse.  Plaintiff does not allege that the meeting was not combative or that she did not reach into her purse during a moment of heightened hostility.  That Ms. Van Dam was erroneously concerned that Plaintiff was reaching in her purse to pull out some type of weapon does not demonstrate severe or pervasive racially harassing conduct.  Thus, the email from Ms. Van Dam indicates that her concern was due to Plaintiff's conduct, and, as noted above, in no way suggests that she stereotyped Plaintiff as having a propensity to act violently on the

basis of her race.  If this was Plaintiff's perception, no evidence supports it.

Furthermore, even if management was closely monitoring her activity, this does not demonstrate a racially hostile work environment.  Managers are undoubtedly charged with the task of seeking optimal performance of all subordinates, and the manner this is accomplished necessarily varies with each circumstance.  Plaintiff apparently perceived increased scrutiny and a realignment of supervisory responsibility as acts of hostility toward her.  Not only is there an absence of evidence that Plaintiff's superiors made any managerial decision on the basis of her race, but her arguments are an attempt to push the Court into requiring her employer to manage her in a manner that is more appealing to her.  In sum, Plaintiff's perceptions are not founded in fact, and she fails to present evidence that any conduct was severe or pervasive so as to create a racially hostile work environment.

For these reasons, Chase is entitled to summary judgment on Plaintiff's claims of race and disability discrimination.

### C.    Race and Disability Retaliation

Plaintiff alleges that Chase retaliated against her by demoting her for complaining about unlawful disability and race discrimination in violation of Ohio law.  Defendant argues that these claims must fail as a matter of law.  Plaintiff does not allege direct evidence of disability or race retaliation, and, therefore, like the other previous claims discussed, these claims must be analyzed under the *McDonnell-Douglas* framework.

In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the defendant knew of this exercise of her protected rights; (3) the defendant consequently took an action that was "materially adverse" to the plaintiff; and

(4) there is a causal connection between the protected activity and the materially adverse action. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003); *see also Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (modifying the third element to require a "materially adverse action" rather than an "adverse employment action").

Defendant concedes, for the purpose of its summary judgment motion, that Plaintiff engaged in protected activity when she filed her charge of race discrimination against Chase in 1998. Defendant argues, however, that this retaliation claim fails because Plaintiff cannot show that the decision to eliminate her position as a Project Manager and to transfer her to the Quality Analyst position was made by someone with knowledge that she filed the charge ten years earlier. Indeed, Plaintiff does not direct the Court to any evidence indicating that she informed her managers about the 1998 filing or that information about the charge was in her personnel file when the transfer occurred. Moreover, for the reasons detailed above, Plaintiff cannot show that she suffered a materially adverse employment action when she was transferred to an equivalent position. Thus, Plaintiff cannot demonstrate a *prima facie* case of retaliation. And, even if she could demonstrate a *prima facie* case of retaliation under Ohio's anti-discrimination law, Defendant has presented a legitimate non-discriminatory reason for the employment action, which Plaintiff does not discredit.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims of disability and race retaliation.

**D.      Invasion of Privacy**

Plaintiff's Complaint alleges that Chase unlawfully invaded her privacy when facts of her

19

mental condition were unnecessarily shared with her co-workers by human resources and/or management employees.  The Complaint also alleges that the facts of Plaintiff's mental condition were presented in a manner that portrayed her in a false light.  Additionally, Plaintiff asserted at her deposition that her manager improperly disclosed to a co-worker that she had gall bladder surgery.

To establish the "publicity" tort of invasion of privacy, a plaintiff must prove the following elements: (1) that there has been a public disclosure; (2) that the disclosure was of facts concerning the private life of an individual; (3) that the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) that the disclosure was intentional; and (5) that the matter publicized is not of legitimate concern to the public.  *Roe ex rel. Roe v. Heap*, No. 03AP-586, 2004 WL 1109849, at *12 (Ohio Ct. App. May 11, 2004) (citing *Killilea v. Sears, Roebuck & Co.*, 499 N.E.2d 1291, syllabus (Ohio Ct. App. 1985)).  To establish a "false light" invasion of privacy tort, a plaintiff must show:  (a) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (b) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.  *Welling v. Weinfeld*, 866 N.E.2d 1051, syllabus (Ohio 2007).

Chase does not dispute the privacy of information regarding Plaintiff's mental health condition.  Chase argues, however, that there is no evidence that information about her mental health was publicly disclosed.  In regard to the allegation that information as to Plaintiff's gall bladder surgery was improperly disclosed, Chase argues that she cannot complain about the apparent disclosure of her gall bladder surgery to a co-worker because she voluntarily discussed

20

the matter with her manager and that disclosure of private information to a single person, or even a small group, does not constitute "public" disclosure.  Chase's arguments are persuasive.

Plaintiff testified that she has no knowledge that facts of her medical condition were disclosed to anyone outside the disability services unit at Chase, which processes medical leaves. Therefore, Plaintiff's claims that facts regarding her mental condition were publicly disclosed, and were disclosed in a manner that portrayed her in a false light, are without merit.  Furthermore, Plaintiff testified that she voluntarily informed Ms. Gravine, her supervisor, about her gall bladder surgery, even though Chase policy instructs each employee not to discuss with his or her manager the details of a medical condition resulting in an absence from work.  That Ms. Gravine apparently discussed this with a co-worker does not create a viable cause of action.  *See Clark v. Clark*, No. H-05-006, 2005 WL 2414789 (Ohio Ct. App. Sept. 30, 2005) (noting that disclosure of private information to a single person, or even a small group of persons, does not constitute publicity).

Therefore, Chase is entitled to summary judgment on Plaintiff's invasion of privacy claim.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 46).



The Clerk shall remove Document 46 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*s/ George C. Smith*

21

**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**